# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

In re:
The Producers, Inc.

Case No.: 8:19-bk-08638-CPM
Chapter 7 Case

Debtor.

_____/

## DECLARATION OF SIGMUND SOLARES

I, Sigmund Solares, pursuant to 28 U.S.C. § 1746, hereby declare as follows under penalty of perjury.

1. My name is Sigmund Solares and I am of the age of majority.

2. I make these statements on my own personal knowledge and belief. If I were called upon to testify, I could and would testify to the truth of the matters stated in this Declaration.

3. In reviewing the user account information provided by the Defendants (as that term is used and defined in the Motion for Contempt and Sanctions to be filed by the Chapter 7 Trustee) on July 1, 2020, I noticed that the Domain Name Portfolio as that term is used in Doc. 241 had recently been transferred to three newly created user accounts at directnic.com. Through my review, I was able to ascertain that those new accounts were consecutively numbered 745593, 745594, and 745596, and that they were created on June 30, 2020.

4. Dvlpmnt Marketing, Inc. ("Dvlpmnt") had at least four different user accounts at directnic.com since May 2012 that housed portions, or the entirety, of the Domain Name Portfolio. Those accounts are numbered 639061, 642579, 643751, and 666851. From my review of relevant documents produced by the Defendants, it appears (but I cannot yet confirm) that names within the Domain Name Portfolio were also housed in one or more Dom Holdings, Inc. accounts at directnic.com, including, specifically, account # 635341.

5. The user accounts at directnic.com track a lot of information. Among other things, the user accounts track invoices for registrations and renewals of domain names, transfers of domain names, internal notes regarding domain names (akin to a log book), log in times for each account, trouble tickets for each domain name, and inquiries regarding domain names (such as inquiries by a third party to purchase a group of domain names).

6. Access to all user accounts at directnic.com that contain information on/housed names within the Domain Name Portfolio, at any time since May 2012, is necessary to make an informed decision regarding whether it is financially prudent to sell a domain name, renew a domain name, redeem a domain name, or let a domain name expire.

7. I reviewed an excel document produced by the Defendants and bates stamped as DNC 1418070. Though I have reason to believe that this spreadsheet is not a complete accounting of arbitrage revenue derived from domain names within the Domain Name

1

Portfolio, this spreadsheet indicates that, on just 17 names from the Domain Name Portfolio recently turned over to the bankruptcy estate, Domain Apps, LLC and Ads Squared, LLC generated approximately $44,739,625.80 in revenue through arbitrage operations since 2014.

8. I also reviewed the Iberia bank records for Dvlpmnt, the company that owns the Domain Name Portfolio. Those records show that Domain Apps, LLC paid Dvlpmnt approximately $211,564.85 in 2014 and 2015, collectively, but that neither Domain Apps, LLC nor Ads Squared, LLC paid Dvlpmnt any money from January 1, 2016 to the present. I do not know if the approximately $211,564.85 paid by Domain Apps, LLC to Dvlpmnt was for arbitrage profits, but I was told that Domain Apps, LLC would pay me and Michael Gardner, through Dvlpmnt, which we own, any profits generated from arbitrage operations.

9. I declare under penalty of perjury that the foregoing is true and correct.

**FURTHER, DECLARANT SAYETH NOT.**

Executed on July 21, 2020

**Sigmund Solares**