UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

THE PRODUCERS, INC.,

    Debtor.
_____/

Case No. 8:19-bk-08638-CPM

Chapter 7

### *EXPEDITED* MOTION FOR ENTRY OF AN ORDER AUTHORIZING CHAPTER 7 TRUSTEE, LARRY S. HYMAN, TO SELL CERTAIN DOMAIN-NAME ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

LARRY S. HYMAN (the "Trustee"), as Chapter 7 Trustee of the bankruptcy estate of THE PRODUCERS, INC. (the "Debtor"), by counsel, hereby moves the Court for expedited authorization to sell certain domain-name assets on the terms set forth herein free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. §§ 105(a) and 363(b), (f) and (m) and Fed. R. Bankr. P. 2002(a)(2) and 6004 (the "Motion"). In support of the Motion, the Trustee states as follows:

**Jurisdiction and Venue**

1.    On September 12, 2019 (the "Petition Date"), DNC Holdings Inc. commenced this case by filing an involuntary petition for relief against the Debtor.

2.    The Debtor consented to entry of an order for relief on November 11, 2019 and the Court entered the Order on December 3, 2019.

3.    On or about December 3, 2019, Larry S. Hyman was appointed as Chapter 7 Trustee of the Debtor's estate and he continues to serve in that capacity.

4.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (e).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1408.

6. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

**Relevant Facts**

7. Prior to the Petition Date, the Debtor owned 39,000 to 90,000 internet domain names (the "Domain Name Portfolio"). The Domain Name Portfolio is now property of the estate.

8. The Trustee is informed and believes that the Domain Name Portfolio has significant fair market value. Accordingly, on July 13, 2020, the Trustee asked the Court to approve the employment of Jeffrey M. Gabriel and Saw.com ("Saw") as domain name broker and portfolio manager for the Domain Name Portfolio. Doc. 290. Saw specializes in domain brokerage, appraisal and portfolio management. On July 15, 2020, the Court approved Saw's retention as an estate professional. Doc. 291.

9. Saw has inventoried and evaluated the Domain Name Portfolio, and has identified 6,906 domain names that it believes the Trustee should market and sell as soon as possible. Those domain names fall into two different groups: (a) 3,716 domain names that Saw has appraised to have the highest fair market value ("Premium Tier Names"); and (b) 3,190 domain names whose registration has or will soon expire, which Saw has appraised to have only liquidation value ("Liquidation Tier Names"). The Premium Tier Names include names that, in Saw's professional judgment, are most likely to yield the highest sale prices at auction. They include names such as yogurt.com, invention.com, camera.com and event.com. The Liquidation Tier Names, by contrast, have, in Saw's professional opinion, no premium generic value or no value based on revenue. The Premium Tier Names are reflected on Exhibit A hereto (together with their public list prices) and the Liquidation Tier Names are reflected on Exhibit B hereto (together with their public auction reserve prices).

10. Saw proposes that the Trustee conduct an auction sale of the Premium Tier Names and the Liquidation Tier Names in different ways.

11. With regard to the Premium Tier Names, Saw has, following its appraisal, determined a public list price for each such domain name as reflected on Exhibit A hereto. The recommended list prices for the Premium Tier Names range from approximately $2,500 to $2.5 million. Saw would advertise the Premium Tier Names on social media platforms and Saw's company blog as available for sale at auction at the list prices set forth on Exhibit 1 hereto. As is common in high-value auctions, Saw would use its professional judgment to determine and set reserve prices for each Premium Tier Name that are known only to Saw, the Trustee, and the Trustee's professionals. If Saw were to receive an offer for a Premium Tier Name at, between or above the reserve price or the list price (the "Original Offeror" or the "Original Offer"), it would provide notice of such proposed sale to all interested parties in this case and give them an opportunity to make a higher-and-better offer to purchase the Premium Tier Name within one business day (the "Competing Offeror" or the "Competing Offer"). An offer shall be deemed to be a "higher-and-better offer" for purposes of this paragraph, if the amount of the offer exceeds the preceding offer by ten percent (10%), capped at $50,000, and if the payment terms mirror or are more prompt for the Debtor's estate. If a timely Competing Offer is received by Saw, it would provide notice of the Competing Offer to the Original Offeror and give them an opportunity to make a higher-and-better offer to purchase the Premium Tier Name within one business day (the "Higher Original Offer"). If a timely Higher Original Offer is received by Saw, it would provide notice of the Higher Original Offer to the Competing Offeror and give them an opportunity to make a higher-and-better offer to purchase the Premium Tier Name within one business day (the "Higher Competing Offer"). If a timely Higher Competing Offer is received by Saw, it would

provide notice of the Higher Competing Offer to the Original Offeror and give them an opportunity to make a final higher-and-better offer to purchase the Premium Tier Name within one business day.  In the event Saw fails to receive a timely "higher-and better offer" at any stage of this process, the Trustee would be authorized to consummate the sale of the Premium Tier Name to the Original Offeror or the Competing Offeror, as applicable, without further notice to the interested parties or approval of this Court.  However, the Trustee shall file Reports of Sale with the Court.  In the event that a particular Premium Tier Name does not receive an offer that meets the reserve price, Saw would decline to sell it at this time or confer with the interested parties in this case in order to determine whether the name should be sold for the best sub-reserve price possible.

12. With regard to the Liquidation Tier Names, Saw would offer each for sale for a minimum bid of $30.00.  In the event particular Liquidation Tier Names fail to sell, Saw would allow their registrations to lapse and such names would no longer constitute property of the Debtor's estate.

13. The Trustee believes that Saw's proposed terms and methodology for the marketing and sale of the Premium Tier Names and the Liquidation Tier Names summarized in paragraphs 9-12 *supra* (collectively, the "Auction Terms and Procedures") represent a rational and sensible strategy to reduce those assets to cash so that the estate receives the highest value that the market will support.

## Legal Standards

14. The Motion proposes sales of assets outside the ordinary course of business that are subject to § 363(b)(1) of the Bankruptcy Code. That statute provides, in pertinent part, that: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate …." 11 U.S.C. § 363(b)(1).

15. Courts have repeatedly held that a trustee should be authorized to sell or use estate property under § 363(b)(1) when the request is supported by some rational, articulated business purpose. *See, e.g., Sunwest Bank v. Walter (In re Walter)*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988) (internal citation omitted); *In re 160 Royal Palm, LLC*, 600 B.R. 119, 126 (S.D. Fla.), *aff'd*, 785 F. App'x 829 (11th Cir. 2019). "The trustee (and, ultimately, the bankruptcy court) must assure that the estate receives optimal value as to the asset to be sold." *In re DeBilio*, No. BAP CC-13-1441, 2014 WL 4476585, at *6 (B.A.P. 9th Cir. Sept. 11, 2014). Ordinarily, the trustee's position as to value to the estate "is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection." *In re Fridman*, No. BAP CC-15-1151-FKIKU, 2016 WL 3961303, at *8 (B.A.P. 9th Cir. July 15, 2016).[1]

16. Where, as here, a § 363(b) motion proposes an auction-style sale, "[a] trustee's management of the procedural details surrounding bidding and sale are ultimately a matter of discretion that depends upon the dynamics of the particular situation." *In re Phillips*, No. 2:12-CV-585-FTM-29, 2013 WL 1899611, at *10 (M.D. Fla. May 7, 2013) (internal citation omitted), *aff'd in part and dismissed in part*, 574 F. App'x 926 (11th Cir. 2014). A trustee "is entitled to exercise 'business judgment' in deciding which bid to accept, and this business judgment is entitled to 'great judicial deference.'" *Id.* (quoting *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)). Matters within a trustee's business judgment include "determining which bid to accept as the best and highest bid, and electing to accept a lower monetary bid." *Id.* (citing *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010)); accord *160 Royal Palm*, 600 B.R. at 126.

---

[1] A sale of estate property outside the ordinary course of business may be completed "by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

17. As with all § 363(b) sale motions, a bankruptcy court reviews a trustee's business judgment "to determine independently whether the judgment is a reasonable one," yet it "should not substitute its judgment for the trustee's." *In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012) (quoting 3 COLLIER ON BANKRUPTCY ¶ 363.02[4] at 363-18 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012)); *accord In re Endoscopy Ctr. of S. Nev., LLC*, 451 B.R. 527, 537 (Bankr. D. Nev. 2011). Ultimately, though, a trustee's justification to sell assets warrants judicial approval if the transaction "makes good business sense[.]" *In re UAL Corp.*, 443 F.3d 565, 571-72 (7th Cir. 2006).

**Relief Requested**

18. By this Motion, the Trustee asks the Court to approve the sale of the Premium Tier Names and the Liquidation Tier Names pursuant to the Auction Terms and Procedures. The sale of the Premium Tier Names and the Liquidation Tier Names clearly makes good business sense, and thus should be approved.

19. First, the list prices represent the optimal value for the domain name assets offered for sale. Saw has appraised the 3,716 Premium Tier Names and determined what the appropriate list price and reserve price should be for each. In Saw's professional judgment, any offer ranging from at (or near) the reserve price to at (or beyond) the list price represents the fair market value of the relevant domain name. Accordingly, the Trustee requests that the Court authorize the sale of the Premium Tier Names pursuant to the Auction Terms and Procedures.

20. As for the Liquidation Tier Names, it is Saw's opinion that receiving any offer at or above $30.00 is all that the market will bear for names that are about to (or have) expired, and/or which have odd names and/or inferior extensions (such as .info or .biz, as opposed to the most valuable extension .com). Accordingly, the Trustee requests that the Court authorize the sale of

the Liquidation Tier Names pursuant to the Auction Terms and Procedures (i.e., at any price at or above $30.00 each).

21.     Second, the Court should approve the sale of the Premium Tier Names and the Liquidation Tier Names free and clear of all liens, claims and encumbrances under § 363(f). Section 363(f) provides, in pertinent part: "The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property" if such interest is in bona fide dispute. 11 U.S.C. § 363(f)(4). Although the Bankruptcy Code does not define what constitutes a "bona fide dispute," courts have held that a bone fide dispute "exists when there is an objective basis for either factual or legal dispute as to the validity of an interest in property." *In re Durango Ga. Paper Co.*, 336 B.R. 594, 597 (Bankr. S.D. Ga. 2005); *see also In re Robotic Vision Sys., Inc.*, 322 B.R. 502, 506 (Bankr. D.N.H. 2005). The purpose of § 363(f)(4) is permit the sale of estate property subject to dispute "so that liquidation of the estate's assets need not be delayed while such disputes are being litigated." *Durango Ga. Paper*, 336 B.R. at 597.

22.     Here, as the Court knows only too well, the matter of domain name ownership, control and revenue has become a flashpoint in this case. There are several contested matters between the Trustee, on the one hand, and the Faia-Decossas Parties,[2] on the other hand, over issues such as turnover, access to and control over domain names that the Trustee asserts are property of the estate. By any objective standard, there is obviously a question as to whether the Faia-Decossas Parties have any valid or legitimate interest in any of the domain names in the Domain Name Portfolio. There is no need, however, to sort out those disputes before the Trustee reduces the Premium Tier Names and the Liquidation Tier Names to cash. That is because §

---

[2] The Trustee occasionally uses the expression "Faia-Decossas Parties" to refer collectively to Gregory G. Faia, Vernon H. Decossas, III and all entities owned or operated by them.

363(f)(4) "does not contemplate or require that the court resolve or determine any dispute about ownership before a sale hearing, but rather requires only an examination of whether there is an objective basis for either a factual or legal dispute about ownership." *In re TLFO, LLC*, 572 B.R. 391, 435 (Bankr. S.D. Fla. 2016) (internal quotation omitted). The several contested motions pertaining to the Domain Name Portfolio demonstrate that there is a more than sufficient basis to invoke § 363(f)(4) here.

23.    Third, the Court should also find that any successful bidder is purchasing the domain name in good faith for purposes of § 363(m). In the specific context of an auction sale, as is proposed here, the fact that estate assets were sold at auction is generally sufficient to establish that purchaser paid value for these assets, as required to qualify as "good faith purchaser" for purposes of § 363(m). *See, e.g., In re Pursuit Capital Mgmt., LLC*, 874 F.3d 124, 135-36 (3d Cir. 2017). Of course, good faith can still be destroyed by conduct such as "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *See, e.g., Adeli v. Barclay (In re Berkeley Del. Court, LLC)*, 834 F.3d 1036, 1041 (9th Cir. 2016) (internal quotation omitted). There is almost no risk of that misconduct here. The Court already approved the employment of Saw because of its expertise in marketing and selling this specific type of asset. Saw's experience in the market will enable it to ferret out and detect any untoward bidding conduct, and exclude any questionable bidders from further participation. Accordingly, the Court should find that any successful bidder qualifies for the protections afforded by § 363(m).

24.    Finally, an order authorizing the sale of estate assets is stayed for 14 days after its entry, "unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Here, the Trustee understands that the market value of internet domain names fluctuates with the passage of time,

plus the Liquidation Tier Names' registrations are expiring with each passing day. The Trustee thus respectfully suggests that there is cause to waive the 14-day period in Rule 6004(h).

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order: (a) granting this Motion; (b) approving the Auction Terms and Procedures; (c) authorizing the Trustee to sell the Premium Tier Names and the Liquidation Tier Names free and clear of all liens, claims and encumbrances (specifically those asserted by the Faia-Decossas Parties); (d) finding that any successful auction purchaser is entitled to the protections of 11 U.S.C. § 363(m); (e) waiving the applicability of Federal Rule of Bankruptcy Procedure 6004(h); and (f) granting such other and further relief as may be just and proper.

    Respectfully submitted,

    FOX ROTHSCHILD LLP
    *Special Counsel to the Chapter 7 Trustee*
    One Biscayne Tower
    2 South Biscayne Boulevard, Suite 2750
    Miami, FL 33131
    Telephone: (305) 442-6543
    Telecopier: (305) 442-6541

    By: /s/ Robert F. Elgidely
        Robert F. Elgidely, Esq.
        Florida Bar No. 111856
        E-Mail: relgidely@foxrothschild.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 3, 2020, I electronically filed the foregoing *Expedited Motion For Entry Of An Order Authorizing Chapter 7 Trustee, Larry S. Hyman, To Sell Certain Domain-Name Assets Free And Clear Of All Liens, Claims And Encumbrances* with the Clerk of the Court using the CM/ECF System. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means including Scott A. Underwood, Esq.,

9

Underwood Murray, P.A., 100 North Tampa Street, Suite 2325, Tampa, FL 33602; Donald R. Kirk, Esq. & Kevin P. McCoy, Esq., Carlton Fields, P.A., P.O. Box 3239, Tampa, FL 33601-3239; Michael W. Magner, Esq., Jones Walker LLP, 201 St. Charles Avenue, Suite 5100, New Orleans, LA 70170; Herbert R. Donica, Esq., Donica Law Firm, P.A., 238 East Davis Boulevard, Suite 209, Tampa, FL 33606; and Steven M. Berman, Esq. & Seth P. Traub, Esq., Shumaker, Loop & Kendrick, LLP, 101 East Kennedy Boulevard, Suite 2800, Tampa, FL 33602.  A copy was also forwarded via first-class mail to all non-CM/ECF users identified on the attached mailing matrix.

By: /s/ Robert F. Elgidely<br>Robert F. Elgidely, Esq.